JULIA EHRLER

v.

BARTHOLOMÆUS BRAUN.

*Filed at Ottawa May 12, 1887.*

FORGED INSTRUMENT—*bona fide holder.* The fact that the purchaser of a forged note is a *bona fide* holder of the same for value, will not avail him anything, and he can not enforce its payment of the person who appears as the maker, unless the latter has so acted in respect to the same as to estop him from setting up the forgery as a defence.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. ARNOLD TRIPP, for the appellant:

A person whose name is attached to a note as security, without authority, becomes liable, if, on inspection, he admits the signature to be his. *Hefner* v. *Vandolah,* 62 Ill. 480; *Hefner* v. *Dawson,* 63 id. 403; *Casco Bank* v. *Keene,* 53 id. 103; *Rudd* v. *Matthews,* 79 Ky. 479.

As to a ratification or adoption of a forged signature, see *Forsyth* v. *Day,* 46 Ill. 191; *Kingsley* v. *Vernon,* 4 Sund. 361; *Livingston* v. *Wiler,* 32 Ill. 397.

Mr. SIMEON STRAUS, for the appellee, denied the contract for extension of the note was ever signed by Braun, but insisted, that if he ever signed the same it created no estoppel. To have that effect, it must appear—

That the other party must have been induced to act upon it. *Direct* v. *Eilert,* 13 Bradw. 99; *People* v. *Brown,* 67 Ill. 455; *Ball* v. *Horton,* 85 id. 159.

That the representation thereby made must have been made with a full knowledge of the facts. *Dorlarque* v. *Cross,*

71 Ill. 380; *Davidson* v. *Young,* 38 id. 153; *Kerr* v. *Sharp,* 83 id. 199; *Reynolds* v. *Ferree,* 86 id. 570.

If the element of fraud is wanting, there is no estoppel. *Flower* v. *Elwood,* 66 Ill. 438.

Mr. Justice Mulkey delivered the opinion of the Court:

Bartholamæus Braun, on the 17th day of June, 1885, exhibited his bill of complaint in the Superior Court of Cook county, against Julia Ehrler, Frederick Lipp, Frederick Freudenberg and Theodore H. Schintz, wherein it is charged, in substance, that complainant, Braun, on the 4th day of June, 1883, entered into an agreement with Randolph Becker for the purchase of a certain lot in Chicago for $5200,—$100 of which was paid on the day of the agreement, and $3100 on the 16th of the same month, at which time complainant received from Becker a warranty deed for the premises; that at the same time he executed to Becker two promissory notes, each for the sum of $1000, payable in one and two years, respectively, at the office of said Freudenberg, with interest thereon at the rate of seven per cent, payable half-yearly; that to secure these notes, complainant, on that day, and as part of the same transaction, executed and delivered to Becker a trust deed upon the purchased premises, wherein Freudenberg is named as trustee, and in the event of his death, resignation, removal, or other inability to act, Theodore H. Schintz is named as successor in trust; that said trust deed was duly filed for record, in the proper office, on the same day; that about the 4th of December, 1883, Freudenberg purchased said notes of Becker, and took an assignment thereof in blank; that complainant, on the 11th of December, 1883, paid the semi-annual interest on said notes at Freudenberg's office; that on June 16, 1884, complainant paid to Freudenberg the principal and interest on the note maturing that day, and also the interest on the other; that on December 16, 1884, complainant paid to Freudenberg the interest then due on the

remaining note, and $500 of the principal, which payment was at the time indorsed upon the back of the note; that about the 31st of May, 1885, Freudenberg absconded from Chicago, charged with the commission of numerous crimes and offences; that on or about the 4th of June, 1885, some one, unknown to complainant, presented to him for payment, two notes for $1000, of the same date and tenor of the two notes given by complainant to Becker, and purporting to be signed by appellee, both of which purport to have been indorsed by Becker to Julia Ehrler, and on the back of the one first maturing there is also an indorsement, which purports to have been signed by complainant, extending the time of payment one year from its maturity; that said notes, and all indorsements thereon, are mere forgeries, committed by Freudenberg, or some one else unknown to complainant; that the unknown party thus presenting said spurious and forged notes, exhibited therewith the genuine trust deed executed by complainant to secure his notes to Becker, as above stated; that on or about June 11, 1885, defendant Lipp exhibited to him his outstanding note to Becker, with the credit of $500 indorsed thereon, as heretofore stated, and also what purported to be a deed of trust securing it, but which in fact was a forgery; that Julia Ehrler now holds the two forged notes and the genuine trust deed, while Lipp holds the genuine note with forged trust deed; that complainant is ready and willing to pay the balance of $500 on the note in Lipp's hands to him, or such person as the court finds entitled thereto. Prayer that upon the payment by complainant of the $500 balance on the note held by Lipp, all of the above mentioned instruments, forged and genuine, be brought into court and cancelled, and that Freudenberg, or his successor in trust, be compelled to execute to complainant a release of said deed of trust.

Julia Ehrler answered, denying the equities of the bill, and also filed a cross-bill, alleging that she purchased the notes held by her, from Freudenberg, paying a valuable considera-

tion, without notice of any infirmity in or defence to them, and prays their payment be enforced by a foreclosure of the trust deed. Schintz answers, disclaiming all interest in the subject matter of the suit. Freudenberg made no defence, and Lipp submitted his claims to the court upon the case made by the bill. On the hearing, the Superior Court dismissed appellant's cross-bill, found the facts as charged in the original bill, and rendered a decree in conformity with the prayer thereof. That decree has been affirmed by the Appellate Court for the First District, and the question to be determined on the present appeal is, whether the Appellate Court erred in affirming said decree. The answer to this question, of course, depends upon whether the evidence embodied in the record supports the decree.

That the notes held by the appellant, and the trust deed held by Lipp, are forgeries, we think is established by the decided weight of evidence. So far, the case does not present the slightest difficulty. Conceding, then, as we must, that the notes in the hands of appellant are forgeries, it is very clear, the fact that she is a *bona fide* holder for value can not avail her anything, unless appellee has so acted in respect to them as to estop him from interposing their original infirmity as a defence,—and such, appellant insists, is the case.

Schintz, through whom appellant purchased the two spurious notes, swears positively, that after their purchase, and while in his possession, to-wit, on the 16th day of June, 1884, the very day the first note matured, appellee came to his office and procured from him an extension of the first note, which matured on that day, and that appellee attached his signature to such extension, in his presence. He also swears to appellee's subsequently calling at his office and paying the accumulated interest on the two notes. There is also evidence tending to show that Freudenberg, from whom appellant purchased the notes, was, at the time of these alleged transactions between appellee and Schintz, in good financial

standing, and the claim of her counsel is, that if appellee had repudiated the notes as spurious when he first saw them, in June, 1884, instead of treating them as genuine, she might have indemnified herself against loss by proceeding at once against Freudenberg.

Two answers are made to this position: First, that the testimony of Schintz upon this branch of the case is not true,—that it is based upon a mistaken identity of appellee; and second, that conceding it to be true that appellee did actually apply for and obtain the extension of the first of these spurious notes, and subsequently pay interest on both of them, as testified to by Schintz, it was nevertheless done under an honest belief that they were genuine, and that this being the case, he is therefore not estopped from repudiating the transaction upon the discovery of the real facts.

In the view we take of the case, it will not be necessary to consider the position last assumed. We think the first answer is the correct one, and it would therefore be useless to discuss the second. Appellee positively denies having ever seen Schintz, to know him, or having ever been to his office for any purpose until early in June, 1885,—long after the occurrences testified to by Schintz as having occurred. The testimony of appellee and Schintz is wholly irreconcilable. As witnesses, we discover nothing in the record to cast a shadow of suspicion upon the honesty or integrity of either; and so far as we can see, both of them seem to be intelligent men. Of course, each of them has a strong motive in sustaining his own view and recollection of the matter. In this respect, Schintz has perhaps the advantage of appellee, but clearly not enough to have a controlling influence, so far as this court is concerned. On the other hand, the testimony of appellee, if untrue, is wholly inconsistent with his honesty, as well as some of the uncontroverted facts in the case. He could not have paid off the first genuine note, as he swears he did, and as is evidenced by his having the note in his possession, and

yet, on the same day, if Schintz's testimony is to be believed, have gone to Schintz and asked him for an extension of the first note. Such conduct can hardly be imputed to any sane man. That he did pay to Freudenberg the first of the genuine notes, on or about the date of its maturity, is not only positively sworn to by appellee, but there is nothing in the record to show the contrary, and to put the matter beyond all controversy, he brings the note itself into court, and puts it in evidence on the hearing. It is obvious there were but two genuine notes, and no one knew this fact better than appellee; and having paid the first note at its maturity, there was no occasion for an extension. Indeed, there was nothing to extend. It would be absurd to say that he obtained the extension under a misapprehension as to its genuineness, and afterwards paid off and took up the true note without even so much as calling on Schintz for an explanation of the matter. Sane men do not act in that way. We repeat, there is no way of explaining appellee's testimony consistently with good faith and honesty, upon the hypothesis that Schintz's evidence relating to this branch of the case is correct.

The case is, however, quite different so far as Schintz is concerned. He had bought these spurious notes for his client, the appellant, from Freudenberg, an unscrupulous, dishonest man, whose interest it was to put off the day of reckoning as long as possible. While there is no direct evidence bearing upon the matter, it is not at all unlikely, that, with a view of protecting himself from an early exposure, Freudenberg concocted and successfully carried into execution the scheme for extending the first note. As Schintz and Braun had never met, and were total strangers to each other, Freudenberg could easily have got some accomplished, unscrupulous person like himself to personate Braun in the transaction; and assuming that the person thus personating him was of the general appearance of Braun, it is by no means surprising

that Schintz should still adhere to the opinion that Braun is the real person with whom the business was transacted.

There is other evidence disclosed by the record, having more or less bearing upon this matter, which, upon the whole, we think strengthens the case of appellee; yet we do not deem it necessary to enter upon a discussion of it, as it would lead to undesirable prolixity. Taking the most favorable view for appellant, the evidence is too evenly balanced upon the turning point in the case to warrant a reversal.

The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*